### McCOLLUM v. WILLIAMSON et al.

### WILLIAMSON v. McCOLLUM.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. EASEMENTS—CONTRACTS—VIOLATION.

Where defendant sold his ice business and personal property used therein to plaintiff, and agreed that plaintiff should have the free use of a pond adjoining, for the purpose of cutting and taking ice, for 20 years, and there was no other adequate supply of water to the pond, except a ditch which drained water from the Erie Canal, which defendant pointed out to plaintiff as the supply for the ice business, defendant had no right to stop the ditch, and thereby obstruct the flow of the water into the pond.

2. SAME—JUDGMENTS—RES JUDICATA.

Where defendant sold his ice business to plaintiff, including the right to take ice from a pond, judgments in two prior actions between the parties, by which it was determined that defendant was entitled to draw off the water from the pond, so as to prevent his adjoining land from being overflowed, and restraining plaintiff from interfering with the flood gates in times of high water, so that the same would not be set back on defendant's land, were not res judicata as to plaintiff's right to restrain defendant from obstructing the ditch by which water was caused to flow into the pond.

Appeal from Special Term, Niagara County.

Consolidated actions between Silas Wright McCollum and Richard Williamson, Sr., and another. From judgments in favor of Williamson in each case, McCollum appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

King, Leggett & Brown, for appellant.
Ellsworth, Potter & Storrs, for respondents.

WILLIAMS, J. The judgments should both be affirmed, with costs.

Williamson brought his action to restrain McCollum from interfering with the supply of water to an ice pond, and to determine the manner of cleaning out the pond. McCollum brought his action to restrain Williamson from cleaning out the pond, and depositing materials upon the icehouse property or elsewhere, without his consent, and for damages.

December 22, 1892, the parties entered into an agreement in writing whereby, for $3,000, McCollum agreed to sell to Williamson his ice business, and the personal property used in the business, and a tract of land, and to give a lease of the icehouse and the land ad-

jacent thereto, with the free use of the pond adjoining, for the purpose of cutting and taking ice therefrom, and of such adjacent land as might be necessary for the removal of snow from the pond without damaging the trees and shrubs thereon, with the appurtenances, for 20 years. The lease was given January 6, 1893. The principal supply of water to the pond was through a ditch entering it on the southerly side. Without the supply of water running through this ditch to the pond, the pond could not be used successfully for the ice business. There was no other adequate supply. During the negotiations for the sale and lease of the property, McCollum pointed out to Williamson the water running through this ditch as a supply for the ice business. The main supply of water in this ditch was from the Morgan Dry Docks, on the south side of the Erie Canal. The ditch went north under the canal, and thence along the north side of the canal west, and under Clinton street through a culvert or viaduct, and thence northerly to the pond. The ditch at Clinton street crossed the state ditch, which ran along the southerly side of the street. The bottom of the pond ditch and the state ditch were nearly on the same level, so that each ditch took a portion of the water coming down from the Morgan Dry Docks. The pond ditch was wider than the state ditch, and took two-thirds or three-quarters of the water from the docks. The pond ditch ran along a natural water course, for the most part, and was dug before the state ditch nearly 50 years ago, and the water had run through it as there described for 25 to 50 years prior to the sale and lease in question. In December, 1901, McCollum sent men with picks and shovels to change the bed of the ditches at Clinton street so as to turn all the water into the state ditch, and prevent any of it running down the pond ditch. They had turned nearly all the water out of the pond ditch when Williamson interfered with the work. This was the interference with the water supply to the pond which Williamson sought by his action to restrain. The court very properly granted this relief. The pond was useless as a place to secure ice in the absence of this supply. It was so understood at the time of the sale and lease by both parties, had been used by McCollum before the sale and lease were made, and no reason appears why McCollum should interfere with the supply by cutting off the flow of water at Clinton street.

Substantially, the only defense interposed to the granting of this relief is that the matter is res adjudicata between these parties by reason of the determination of two former actions between them about 1894 or 1895. In the action of Williamson against McCollum then brought, there were two causes of action alleged: First, the one here complained of—the interference with the supply of water through the ditch; second, interference with the gate at the outlet of the pond, thereby drawing out the water when ice was forming. And it was sought to restrain both of these alleged trespasses. The court found that the acts complained of, if done at all by McCollum, were done to protect his property surrounding the pond from being injured by the overflow of waters therefrom, and from setting back of the water in the ditch into the pond, so that the water coming

from higher grounds upon the surface of the land, instead of entering the ditch, and passing through it into the pond, overran the surface of the land, injuring his fruitage, shrubbery, and vegetables thereon, and that McCollum had a right to do such acts for the purpose of preventing said injury, and there was no evidence that such acts in any way interfered with the right of Williamson to cut and take ice from the pond. There was a failure, therefore, to prove any cause of action, and the complaint was dismissed.

In the other action, by McCollum against Williamson, decided at the same time, it was sought to restrain Williamson from in any way interfering with the gate, or with the flow of water through the same; and the court by the judgment therein restrained Williamson from maintaining the gate to a point at which in times of flood the waters of the pond would rise, so that the same would flow or set back upon the lands of McCollum and cause the same to be submerged, and adjudged that when the lands were so submerged, or seriously threatened therewith, McCollum should have the right to lower the gate to protect his property from such injury, and Williamson should not interfere with such right.

There was nothing in the determination of those actions that prevents the granting of the relief here, restraining McCollum from interfering with the water supply to the pond through the ditch in question. There is no claim now that Williamson has the right to maintain the gate so as to flood McCollum's premises. No relief is here asked as to the maintenance of the gate. That question was settled by the former litigation referred to. The other issue between the parties in the present actions relates to the subject of the cleaning of the pond. It is of no value for the purpose of harvesting ice unless cleaned out yearly, or nearly so. McCollum cleaned it out while he used it for getting ice. Williamson must do the same. This proposition seems not to be controverted. The sale and leasing of the property involved the right to clean the pond. McCollum used wheelbarrows, and put the materials near the edge of the pond. The judgment provides for the same manner of cleaning by Williamson; McCollum to designate the places at each end of the pond where the materials shall be deposited, or, at McCollum's option, the materials shall be deposited at any other place he may designate on his premises, by the use of wagons, and, in default of any designation being made, Williamson may remove the same from the premises. This is a fair and just provision, which cannot well be objected to by McCollum.

The views herein expressed lead to the affirmance of both the judgments appealed from, with costs. All concur.